All right, our third and final case is 22-1221, Martinez v. Garland. Mr. Ward. Good morning, Your Honors, and morning, Counsel, and may it please the Court. I'm Michael Ward on behalf of Jose Antonio Martinez, who is an Honduran who is seeking protection from threats to his life in Honduras. He has been denied statutory withholding and protection under the Convention Against Torture, and those are the matters that we appealed. But this Court has added another matter, which is one of jurisdiction. I will address the jurisdiction first because that seemed to be something the Court was particularly interested in. There's no need to remind the Court of certain basic principles, but in a case like this, I feel the need to do so anyway. First is that in jurisdiction cases, the Court must take into account the well- settled and strong presumption favoring review of administrative actions. And second, and important here, is that a panel of this Court cannot overrule another panel except in the case of an intervening ruling of the Supreme Court or a ruling of the Supreme Court of this Court that makes that previous precedent untenable. The Court did not directly mention which aspects of jurisdiction due to the Johnson and Nosler cases that it was concerned with, but I see two. The first is whether the Court has jurisdiction over Convention Against Torture and Statutory Reholding Cases in conjunction with appeals, or not appeals, but reviews of orders of removal under USC 1252A1. I believe that with regard to the Convention Against Torture, Nasrallah decided that clearly in the affirmative. Justice Kavanaugh pointed to two separate statutes that authorized the Convention Against Torture to be heard with withholding appeals, I'm sorry, with removal appeals. And he also pointed to Section 1222B9, which essentially tells the Court to hear all related appeals with appeals of removal orders. With regard to statutory withholding, the first two may not apply, but the second certainly does. B9 is just as applicable to statutory withholding as it is to the Convention Against Torture. There's no other mention in Nasrallah or Johnson of, I'm sorry, in Nasrallah, of statutory withholding, except for raising the possibility that someone may think that the holding in Nasrallah also applied to statutory withholding. I personally find that an implication there that statutory withholding is also to be heard with orders of removal, but it's a very weak implication. Right. The question is then, a withholding order can ride along with a final order, right? That Congress has provided that in B9. But what's the final order that it's riding along with here? And was a petition from that order timely filed? And the Supreme Court's told us that's a jurisdictional timeliness requirement. You are turning, Your Honor, to my second point, which I believe is the more complicated point, and grows out of a Second Circuit decision finding that a reinstated order of removal is final at that point, and any petition for review of the reinstated order of removal has to be filed within 30 days of that reinstated order. It is our position that that Second Circuit decision is contrary to the precedent of this court, as well as many other courts. And recently, subsequent national... Well, I guess, but the question is whether it's consistent with the precedent of the Supreme Court. And if we're, you know, if our precedent is resting on thin ice, if not overruled subsidentio as a result of Supreme Court precedent, I mean, we're required to follow that. So what's your argument? Your Honor, our position is, would not disagree with you, but in order for the Supreme Court to overrule that precedent, it must do so precisely, explicitly. It must make the precedent untenable. And this court has subsequently to Johnson and Nasrallah and Thomas Ramos decided that it has jurisdiction in a case... I didn't read the, I didn't read a jurisdictional discussion in that case. There's a subsection, Your Honor, I mean, a note, note nine, I believe it is, that says we have jurisdiction in this case, even though it was decided by a judge. Now, I think that says we're reviewing the opinion of the IJ because the statute doesn't provide for BIA review. So the IJ's opinion is the one the court has to review, but there was no jurisdictional briefing or discussion or argument at all in that case. Well, there's the fact that they must have been considering jurisdiction when they specifically noted jurisdiction there. But elsewhere in the case, it states, and this is a case when the original order of the original order reinstating removal occurred in February 2019. The petition for review was not until 2020. In Thomas Ramos, the court specifically said, specifically said that this was a timely petition. In the text of the opinion. Right, but we don't, we don't give credence to what the Supreme Court has called drive-by jurisdictional rulings, right? Just because we exercise jurisdiction doesn't mean that that's the precedential ruling of the court, that it's considered all the arguments we're talking about today and has made a finding about them that then binds other panels going forward. I would suggest, Your Honor, that in deciding whether it is a drive-by jurisdictional issue, you should consider all the factors, factors that the court specifically said it was dealing with jurisdiction. It said it was timely. Excuse me? It said it was timely, right? It said it was timely and it also said it had jurisdiction in the judge, from the judge. Both of these are, are indications that jurisdiction was in the mind of the court. Let's assume the mind of the court differently, or let's just assume we get past that. We don't find ourselves bound by that footnote. Talk to me about the substance. So in Johnson, the court said the finality of the order of removal does not depend in any way on the outcome of withholding only proceedings. And in Nasrallah, the court didn't talk about finality, but it talked about validity. And the court has distinguished between the order of removal and withholding orders, right? And the court has told us no matter what happens in a withholding proceeding, it can never affect the final order of removal. It can't affect its validity, which seems like a strong indication from the court, Supreme Court, to us that withholding, the disposition of withholding requests can never affect the finality of an order of removal. An order of removal becomes final when it becomes final and that that's not affected by withholding proceedings that can't, you know, that have no effect on the validity of that removal order. So what do we do with that? What I suggest you do with that, Your Honor, is to heed the words of Justice Alito in their interpretation of Section 1252, which uses different language than 1231 and relates to judicial review of removal orders rather than detention. The court was very specifically not ruling on the jurisdictional aspect of a final or a reinstated removal order. I would also point back to this court's ruling, albeit vacated, but not for that reason, in Guzman-Chavez v. Hobson. Vacated by Johnson, right? What? Vacated by Johnson. Yes, but on a different, essentially, issue. And in that decision, the court said that a ruling on a reinstated removal order is not final until all the withholding proceedings are done. And there are numerous courts of appeals preceding Johnson that have held that same matter. And then you have Johnson, which says, we're not taking a position on those. So I don't, I don't, I don't see how Johnson. There's Nasrallah, too. I'm sorry. Right. Nasrallah and Johnson don't have a holding that says all of these cases are overruled. The court doesn't have jurisdiction. We have to decide whether we have jurisdiction in light of the Supreme Court's new pathway that, that clearly distinguishes between the validity and, it seems like, finality of a removal order and the withholding proceedings to include Kat, right? To include, include Nasrallah. I would respectively submit, Your Honor, that the only time this court needs to reconsider its precedent on such issues is when that precedent cannot be reconciled with the Supreme Court decision. That's essentially what the Fifth Circuit did on the same subject. The Fifth Circuit had an independent ground for jurisdiction, right, that we don't have here in the Rubio case. Well, the Fifth Circuit, I would have to go back and look at that, but the Fifth Circuit specifically said that we can't take a position on this because our precedent is different and nothing in Johnson changes specifically, specifically contrary to that. Yeah, in fact, I mean, Justice Thomas in Johnson went out of his way to make the point that the court lacked jurisdiction in that case and the court was wrong to take the case on the merits and that didn't win the day. So it seems like, you know, while the court may be hinting at a jurisdictional problem, it hasn't expressly said so. And I would take the position until it does so expressly, expressly this court's and taking into consider other courts' precedent controls. Turning to the merits, there are a number of issues, and the first of which I will address quickly is whether there is substantial, excuse me, serious reason to believe that Mr. Martinez committed a serious nonpolitical crime in Honduras. It is our position that, first of all, a statement, two statements, in fact, without a corpus, without any corroborating evidence that there was a crime whatsoever, not a name, not a place, not an evidence, cannot. Ward, I know you're looking at the clock. Why don't you take an additional three minutes and just get to the merits? Because I know we spent a lot of time on this jurisdictional question that we foisted on you at the last minute. So go ahead and. Well, this is part of the merits. No, what I'm telling you is I'm not holding you to the clock, but. Oh, OK. It's our position that the corpus in and of itself can't constitute substantial or serious reason to believe. And counsel is going to talk to you, I'm sure, about the burden switching, which I will try to respond to in my rebuttal. But this particular statement themselves lack an issue of credibility. One was made after Mr. Martinez was hit on the head and had mental issues. Both were made under translation situations that were not documented where one was not documented and the other could be open to mistaken understandings. In addition, there was there are records from Honduras that says he has no criminal record. So, you know, I will leave it at that because of other matters, but essentially it's stretching anything to call this serious reason to leave. Second big issue deals with. Convention against torture. The immigration judge conflated the rulings under the Convention against Torture by finding that there was no evidence that Mr. Martinez would be tortured by government officials or people acquiescing with the government. That's two different questions. First question is, is he going to be tortured? Second question is, is there acquiescence? On the first question, it is hard to believe that anyone, any rational decision maker would not find a probability of torture when eight members of his family have been murdered in Honduras, where he has numerous declarations and autopsies and matters discussing their death when he has been beaten himself numerous times by the gangs. So on that issue, it would appear to me that there can be very little question, but the judge was clearly erroneous. On the acquiescence issue, the problem is that the judge did not engage with Mr. Martinez's evidence. He presented considerable conditions as well as testimony and declarations about the police not responding to anything. The judge only said, a lot of this is dated. Of course, it was no more dated than the Department of Human Services data. And he discussed no individual pieces of Mr. Martinez's data. A judge does not have to clearly talk about every piece of evidence, but he has to make it clear he's looked at it, that he's considered it, that he explains why it's wrong. The judge here did none of that. In fact, at one point, there's some question raised whether he had even looked at all of it in the second hearing, whether he got around to it in between or not is unclear. But he never engaged in that information. Second, he only decided what the national government was doing. He said the national government is taking steps to improve the situation, and that's not the standard. The standard is local officials and national officials. If local officials are acquiescing in torture, that's just as important as national officials. The immigration judge also misstated the standard of willful blindness. He said it required the authorities to have knowledge of torture, of the torture that's going on. It does not. It only requires it to be aware, general of torture happening, and place a blind eye. Having used well over my extra time, I will hope I can have a little bit of rebuttal when Attorney General is finished. Thank you, Mr. Ward. Good morning. May it please the court, Robert Tennyson for the government. So for the longest time, the Department of Justice has taken the position that you wait until the end of withholding only removal, withholding only proceedings to, you know, for the petition for review to be filed, right? But the logic of Nasrallah and Guzman Chavez, or Johnson as we're calling it, is very, seems very much the contrary and has caused us to take a position shift, quite frankly. Under Nasrallah, the, it's clear that cat orders are not part of a final order of determination. They don't merge with the final order of determination. They're something separate. They do get carried with the final order of determination under 1252A4 and 1252B9. Those are funneling provisions. Likewise, under Guzman Chavez, the court determined that the reinstatement order is administratively final when the reinstatement order is made, not when the withholding only proceedings take place, that those are not related to the final order of removal. Guzman Chavez's decision, there was a separate opinion about jurisdiction, but that was a different jurisdictional question, right? That was the one about detention and reviewing those, right? The Supreme Court didn't reject what we're talking about today, right? Exactly. So, and interestingly enough, this court, yes, so the logic of Guzman Chavez itself with regard to how the, I guess what, the relationship of withholding only provision, withholding only proceedings to the underlying restatement, reinstatement proceedings, right, and the administrative finality of that would seem to conclude that, would seem to or would necessarily imply that there is no jurisdiction, that there won't be jurisdiction, that the appropriate final order of removal isn't the thing that occurs at the end of withholding only proceedings because that's separate from the reinstatement order. That is a decision, determination that is independent of the reinstatement order, but that the withholding only proceedings and CAT determination, that all of that gets funneled back in to the final order, which is the reinstatement order under 1252 B-9. And so the appropriate time under 1252 B-1 for the petition for review to be filed is the time of the reinstatement order. In this case, the reinstatement order, the reinstatement order was issued, I believe, on January 15th, 2021. So the petition for review would have been due on February 14th, assuming that's not a weekend, of and the petition for review. Just to be clear on that, so you disagree with the Second Circuit's analysis that even a reinstatement order is not sufficient to to trigger a jurisdictional issue? Right, we disagree with that one. It's the reinstatement order. It's not the original removal order. Now, there's language in 1231 A-5, right, that the removal order shall be reinstated from the date of the original order. But it also seems that from that language that it that it's not clear that, you know, you go back to the original removal order to look for the date of the final order of removal. And also there's language in 1101 A-47A, right, which talks about an order of deportation being a determination, being either a determination that an individual is deportable, right, or being ordered deported. And here, with a reinstatement order, an individual is, you know, in the reinstatement proceedings, being ordered deported. So it would seem that, you know, based upon those aspects of the statute, it's the reinstatement order that we look at. The reinstatement order, the timing of the reinstatement order, is the time from which the petition for review should be filed. We're also not... That doesn't help the petitioner here, right? It does not, Your Honor. Okay, but in your brief, I mean, you seem a lot more definitive now that we have dismissed for lack of jurisdiction. In your brief, you said that we might exercise jurisdiction just as a matter of prudential concern, but either we have jurisdiction or we don't. Right, you have jurisdiction or you don't. I think that the hypothetical jurisdiction... So the Ninth Circuit has taken hypothetical jurisdiction in particular cases. I'm trying to remember. It's not this type of... It's not this type of case, but... In your hypothetical jurisdiction... Right. It doesn't seem to depend on the merits, right? Right, exactly. You thought we have... We can presume to have jurisdiction if we're going to affirm or deny the petition, right? But there's no basis for that in the law. Ultimately, no. The Ninth Circuit has done it. That's questionable. So, but, you know, it's kind of... The petitioner won't be prejudiced here because they would lose on the merits anyway if you were to apply the jurisdictional rule here. Yes. And I'd go back very quickly to Thomas Ramos. Really, you were on the panel, Your Honor, with regard to the drive-by jurisdictional aspect of footnote three, right? The court noted that, you know, essentially said the IJ's ruling on review pursuant to the regulatory provision is the agency's final order. But it's just sort of this quick note, and it cites back to pre-Nasrallah and pre-Johnson case law, an unpublished decision from back then. It's just a very quick thing. It is a drive-by premise. With regard to Guzman Chavez v. Hunt, in footnote 10, this court did refer to, you know, and did discuss briefly whether or not jurisdiction would be had at the end of the, you know, following a final order of, you know, following withholding only proceedings. And the court said, we're not going to go out of our way to separate ourselves from the other circuits that said we wait for the final order, you know. We wait for the conclusion of withholding only proceedings before we exercise jurisdiction. The thing is, is Guzman Chavez, but that was bound up in the question of whether or not the withholding only proceedings were administratively final. And that's something that the Supreme Court took, you know, took on review in Guzman Chavez v. Johnson and said the Reed Statement Proceedings are administratively final and therefore under 1231, you know, that detention is authorized under 1231, not 12, you know, I guess what, 1226a. I believe, you know, unless this court has other questions for me on the jurisdictional issue, let me move over to the next. Can I ask you one question? Sure. You don't have to spend a long time on this because I guess nothing rides on it, but you're saying that the reinstatement order is its own final order of deportation. How do we reconcile that with 1101's definition of when an order of deportation becomes final? It points to, like, review by the BIA and things that aren't available for reinstatement orders. Is that just kind of helpful guidance or is that a suggestion that maybe we're looking at the wrong order? Right. So I would say the finality provisions, the first part has to do with when they become final is when the board actually addresses, right, the determination of removability. And the second provision, I believe it's, you know, 1101A47B, I'm going to say two, talks about is when the time to appeal to the board has run. Well, I mean, logically, under a reinstatement order, the time to appeal to the board runs immediately, you know, has run immediately because you can't afford to appeal to the board. It's not as though it's not considered. And take it to an IJ, right? You can't even, you skip a step. So it's just, there's a little bit of a tension there. There is a tension. That, I admit it. But the thing is, is that if you read it, there is an obvious answer when you look at it. And that is, well, that time to file a petition for review begins to, or the time that it becomes final is immediate because the time to seek review before the BIA doesn't exist. It's not there. It runs instantaneously instead of the 30 days that you would get if you had a case before an immigration judge. Thanks for indulging my question. Oh, no, it's a great question. So, yeah. Okay. Let me move to the merits in this case. With regard to whether or not there were serious reasons to believe the petitioner had been, had committed a serious nonpolitical crime, the question here is whether or not a reasonable fact finder would be compelled to find to the contrary. This is a substantial evidence question. And even putting aside the burden of proof issue, there's enough here that the immigration judge and the board did not err, or at least that substantial evidence supports the determination that the petitioner, that there are serious reasons to believe that the petitioner committed a serious nonpolitical crime. There are his own statements from 2017 in his affidavit, 2018 in his declaration, I mean, during his testimony, in which he admits to having committed a homicide. In addition to that, you know, even his later testimony of, well, or his statements that, well, he was jailed for a period of time, well, they investigated my offense, but they didn't have enough evidence. Or his statements during his would give the immigration judge sufficient basis, a reasonable fact finder, sufficient basis to conclude that the petitioner had been convicted of a serious nonpolitical crime, or had committed a serious nonpolitical crime, regardless of whether he was convicted, ultimately convicted. Again, the standard is, is that this court has to find that it is compelling, I mean, that a reasonable fact finder, any reasonable fact finder would be compelled to find to the contrary. And even if some fact finders may look at this and say, well, with the addition, with the, with the what, police reports or documents from police recording that he had not been, they couldn't find evidence of his conviction, and his own testimony and all of that, nothing would compel a reasonable fact finder to come to the conclusion that he had not been convicted of a serious nonpolitical, nonpolitical crime. Does the court have questions about the burden shifting aspect of this before I go on? No, I, I have a particular concern about the Catt claim. I think that's a closer. Okay, right. If you would like, I could start talking about it, or if you have your question, I can, I'd be happy to start. Oh, why don't you go ahead and start talking, and then during the course of this, I may ask a question. Right. With regard to the, to the Catt claim. I mean, you conceded, for example, that the district court apparently made a mistake with respect to the credibility, credibility finding. Do you agree with that? Oh, the credibility finding, we've conceded the concern of the credibility finding, it has problems. It is brief, it is, there aren't very many reasons given for his demeanor finding, so yes, we're, we aren't defending that. With regard to the Catt determination, really it boils down to the determination as to whether or not a public, a public official in the Hunteras would acquiesce in his torture by, you know, in his torture by gangs. And the question is how do you gauge that on appeal? BIA, is it de novo or clearly, clearly erroneous? So it depends upon the way in which the question comes up, right? This court has bifurcated those kinds of issues, and the board should. So the first aspect is what's likely to happen factually, and the second question is does this qualify as, would this qualify as acquiescence or not? Right, but I don't know that the BIA made that distinction. So it looks like the BIA was focusing on that first question. With regard to the statements in the, the statement, I mean, it does characterize it, it does characterize it as there's no acquiescence here. But it looks like the board is looking at the immigration judge's factual finding, which was that the petitioner's own testimony was speculative in nature, even if it was, even if it was credit, taken as credible. And that the country conditions reports would indicate that the government is controlling its own police, that public officials wouldn't engage in this because the government has, is exercising control such that no public, so that it's not more likely than not that a public official would be engaged in that kind of act, would be engaged in torture of the petitioner. And therefore, based upon that, right, that there wouldn't be, that you don't have the willful blindness issue, that a public official would not be willfully blind to any torture that, that Mr. Martinez would, would endure. So I do think that the board did. It's not, there are aspects of the board's decision that, especially the last paragraph where there's a throwaway line, where it's not entirely clear what it's saying, but it very clearly addresses the acquiescence issue. So, and with respect to the country conditions evidence, so are we reviewing, let me back up a little bit, are we reviewing the IJ's decision, the BIA's decision, or both? We review, the court reviews both in this circumstance because the board did elaborate on the immigration judge's decision. But the immigration judge's decision doesn't form the board's decision ultimately. So it doesn't appear that the, I mean, you may disagree, but the IJ, you know, engaged with what seemed to be some rather substantial country conditions evidence that tended to rebut the notion that the government was doing what it could to control gang violence and the like. Right. The immigration, the immigration judge centered on the country conditions reports, right? But then his response with regard to the other information or data that had been put before him was that it was dated, that you had documents that dated from, you know, 2007, 2008, 2009. In the, in the, what, filing the petitioner had made, and he just was not going to be considering that because conditions in the country have changed based upon the current country conditions report. So even if those past documents had shown one thing, the immigration judge was certainly allowed, permitted to say, those documents are dated. The current country conditions reports says that the government is actively engaged in control, you know, in controlling the police, checking their corruption, and over, you know, engaging in oversight. And if that's the case, I mean, and unless a reasonable fact finder would be compelled to find to the contrary, this court has to, you know, has to uphold that determination that's been made by the immigration judge. So going back to just overall, the agency's determination with regard to Kat and to whether or not he is likely to be tortured with the, with the consent of or acquiescence of the Honduras, you know, a public official in Honduras is supported by substantial evidence. Could the, could the board and the immigration judge have said more? Absolutely. Did they say enough? Absolutely. No reasonable fact finder would be, I mean, no reasonable fact finder would be compelled to find otherwise. This court has no further questions for me. The government will rest. Thank you very much. Thank you very much. Mr. Ward. With regard to jurisdiction and the applicability of Johnson, which deals with detention to orders of removal, I think it's important to focus on the fact that Judge Alito always speaks about something being administratively final. He uses administrative every time he does it. And he never makes reference to the definition of finality, which Judge Rushing mentioned, in Section 1001, I believe it's 47, I'm not sure. So it certainly seems like Judge Alito was talking about two different types of finality, which the Ninth Circuit actually said they don't have to be the same thing in one of the decisions on detention was not overturned by the Supreme Court. Second, I must especially disagree with Ansel. It is our position that whether there is substantial, I mean, serious reason to believe that Mr. Martinez was engaged in a serious non-political crime is a question of law. It's a question of the evidence that was there, whether that evidence is sufficient to meet the standard set forth in the statute. This is not a fact finding. You're not finding that he did commit these crimes. You're finding that the evidence is sufficient to meet this standard. I also, going back to jurisdiction, I would ask the court to look at the amicus briefs, or brief, at least as it's been filed, regarding the consequences of the Second Circuit's decision and what that would do to the already messed up immigration situation. And finally, although counsel did not get into the burden switch, and therefore technically I can't, counsel did recently submit a supplemental case to the court on the burden switch. It would probably be more efficient for me to say something to the court now rather than to write a response as to why that case actually supports our position rather than opposes it. Specifically that the case does talk about a burden switch, but the switch only occurs after the statutory standard has been met. A serious reason to leave. That's the essential holding of a weight in Garland. So this does not support the idea that some evidence is sufficient. Thank you, Your Honor. Thank you, Mr. Ward. I note that you're not court appointed, but you took this case on pro bono, and I want to thank you for doing that. Mr. Martinez's interests were ably represented here today, so thank you very much, as was the government's interests. I appreciate both your arguments. We'll come down and greet counsel and adjourn for the day.
judges: Albert Diaz, Allison J. Rushing, Henry F. Floyd